UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| JULIET SWEIS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITES STATES FOREIGN | : | Civil Action No. 13-366 (GK) |
| CLAIMS SETTLEMENT | : | |
| COMMISSION, <u>et al.</u>, | : | |
| | : | |
| Defendants. | : | |

---

## MEMORANDUM OPINION

Plaintiff Juliet Sweis ("Sweis" or "Plaintiff") brings this action against the United States Foreign Claims Settlement Commission ("FCSC" or "Commission"), its Commissioners, Rafael Martinez and Anuj Desai, the United States Department of State ("State Department"), John Kerry in his official capacity as Secretary of State, the Department of Justice ("DOJ"), Eric Holder in his official capacity as Attorney General, the United States Department of Treasury ("Treasury Department"), and Jacob Lew in his official capacity as Secretary of the Department of Treasury (collectively, "Defendants" or "Government"). Plaintiff alleges violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 <u>et seq.</u>, and separation-of-powers principles.

This matter is presently before the Court on Plaintiff's Motion and Memorandum in Support Thereof for a Preliminary Injunction [Dkt. No. 8]. Upon consideration of the Motion, Opposition [Dkt. No. 12], and the entire record herein, and for the reasons stated below, Plaintiff's Motion is **denied**.

## I.   BACKGROUND

On December 27, 1985, Sweis was injured when four Abut Nidal Organization terrorists opened fire in the Rome International Airport. Complaint ("Compl.") ¶ 13. She was seven years old at the time and suffered "hand grenade shrapnel and concussion injuries to her head, resulting in permanent physical injuries." Id. ¶ 20.

On April 21, 2006, a group of individuals, including members of Sweis's family, were named as plaintiffs in a lawsuit in this Court, Buonocore v. Great Socialist People's Libyan Aeab Jamahiriya, Case No. 06-727 ("Buonocore"). Compl. ¶ 26. Sweis was not a named plaintiff. On July 9, 2007, that complaint was dismissed without prejudice. [Case No. 06-727, Dkt. No. 34]

On March 28, 2008, an amended complaint was filed in Buonocore. Compl. ¶ 30. Sweis was added as a named plaintiff, but did not allege any physical injuries. Id.

On August 4, 2008, President George W. Bush signed into law the Libyan Claims Resolution Act ("LCRA"), Pub. L. No. 110-301,

122 Stat. 2999 (2008). Id. ¶¶ 36, 45. The stated purpose of the LCRA is to provide for "fair compensation to all nationals of the United States who have terrorism-related claims against Libya through a comprehensive settlement of claims by such nationals against Libya pursuant to an international agreement between the United States and Libya." Id. ¶ 45.

On August 14, 2008, the United States and Libya entered into an international claims agreement, the US-Libya Claims Settlement Agreement ("LCSA"). Id. ¶ 46. The LCSA intended to settle all claims, terminate pending claims, and preclude future claims. Defs.' Mot. to Dismiss & Opp'n to Pl.'s Mot. for a Prelim. Inj. ("Defs.' Opp'n") Ex. 2, p. 3.

On October 31, 2008, President George W. Bush signed Executive Order 13,477. Id. ¶ 47. The Executive Order declared that all terrorism-related claims of U.S. nationals against Libya were settled by the LCSA and terminated pending suits in U.S. courts. Id. ¶ 48. On December 24, 2008, this Court granted the Libyan Defendants' Motion to Dismiss with prejudice in Buonocore, as a result of the LCRA and the Executive Order. [Case No. 06-727, Dkt. No. 78]

On December 11, 2008, the State Department referred certain claims to the FCSC, a quasi-judicial, independent agency within the Department of Justice ("First Referral"). Compl. ¶¶ 52, 55.

-3-

The First Referral created jurisdiction in the FCSC over the claims of U.S. nationals who were named plaintiffs who had pled physical injury in pending litigation, including Buonocore. Id. ¶ 55. On March 23, 2009, the Commission announced the commencement of its adjudication of the claims contained in the First Referral. Id. ¶ 58 (citing 74 Fed. Reg. 12,148).

Sweis filed a timely claim under the First Referral. Compl. ¶ 59. On February 18, 2010, the FCSC entered a Proposed Decision declaring that it did not have jurisdiction over Sweis's claim because she had not pled a physical injury in the Buonocore complaint. Id. ¶ 62.

On March 1, 2012, Sweis filed a motion to amend the Buonocore complaint nunc pro tunc to March 28, 2008, the date of the original filing. The purpose of the amendment was to include allegations regarding the physical injuries suffered by Sweis during the Rome Airport Attack. Compl. ¶ 61. On April 2, 2010, this Court granted that motion. [Case No. 06-727, Dkt No. 81]

Sweis objected to the FCSC's Proposed Decision, and provided the Commission with this Court's nunc pro tunc order permitting her to amend her complaint. Compl. ¶ 63. On September 14, 2012, the Commission held a hearing devoted to this particular jurisdictional issue. Id. ¶ 64.

-4-

On December 12, 2012, the Commission issued a Final Decision refusing to assert jurisdiction over Sweis's claim. It concluded that the First Referral's explicit exclusion of individuals who had alleged only emotional injuries would be rendered meaningless if such claimants could retroactively amend their claims to include allegations of physical injury. Pl.'s Mot. & Mem. in Support Thereof for a Prelim. Inj. ("Pl.'s Mot.") Ex. 8, pp. 5-6. The Commission also considered the nunc pro tunc Order, but held that such orders could not be used to change substantive rights or jurisdictional facts. Id. pp. 11-12. Thus, it concluded that the Order did not change the jurisdictional fact that Sweis had not alleged a physical injury in a pending case at the time of the First Referral. Id. pp. 12-13.

On January 15, 2009, the State Department referred additional claims to the FCSC ("Second Referral"). Compl. ¶ 71. These claims were divided into multiple categories. Id. "Category E" included U.S. nationals who had been physically injured in Libyan terrorist attacks who had not been named as plaintiffs in pending litigation. Id. On July 7, 2009, the Commission announced the commencement of its adjudication of the claims contained in the Second Referral. Id. ¶ 73 (citing 74 Fed. Reg. 32,193).

Sweis filed a claim under the State Department's Second Referral. On December 12, 2012, the Commission issued a Proposed Decision declaring that it did not have jurisdiction over her claim under Category E, because Sweis had been a named plaintiff in the Buonocore complaint. Compl. ¶ 75. On February 16, 2013, the Commission issued its Final Decision denying Sweis's Second Referral Claim. Id. ¶ 76.

On March 21, 2013, Sweis filed the instant complaint. On March 27, 2013, she filed a Motion for Preliminary Injunction [Dkt. No. 8]. On April 8, 2013, Defendants filed a Motion to Dismiss and Opposition to Plaintiff's Motion for a Preliminary Injunction [Dkt. No. 12].

## II.   STANDARD OF REVIEW

A preliminary injunction is an "extraordinary and drastic remedy," Munaf v. Geren, 553 U.S. 674, 689 (2008) (citation omitted), and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)); see Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (noting that "the movant, by a clear showing, carries the burden of persuasion") (emphasis in original).

A party seeking a preliminary injunction must establish "[1] that [she] is likely to succeed on the merits, [2] that [she] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in [her] favor, and [4] that an injunction is in the public interest." Winter, 555 U.S. at 20.

In the past, these four factors "have typically been evaluated on a 'sliding scale[,]' " such that "[i]f the movant makes an unusually strong showing on one of the factors, then [she] does not necessarily have to make as strong a showing on another factor." Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291-92 (D.C. Cir. 2009) (citing Davenport v. Int'l Bhd. of Teamsters, AFL-CIO, 166 F.3d 356, 361 (D.C. Cir. 1999)).

The continued viability of the sliding scale approach is uncertain as the Supreme Court and the D.C. Circuit have strongly suggested, without holding, that plaintiffs are required to independently demonstrate a likelihood of success on the merits. Sherley, 644 F.3d at 392-33; see also Davis, 571 F.3d at 1292.

However, this Court does not need to address that issue because our Court of Appeals has always held that "the sine qua non of the preliminary injunction inquiry," is some showing of irreparable injury in the absence of an injunction. Trudeau v.

-7-

F.T.C., 384 F. Supp. 2d 281, 296 (D.D.C. 2005), aff'd, 446 F.3d 178 (D.C. Cir. 2006); see also Davis, 571 F.3d at 1296 (declaring that plaintiff "must show a likelihood of irreparable harm") (Kavanaugh, J., concurring). A court can refuse to issue an injunction without considering any other factors if irreparable harm is not demonstrated. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief"); see also Winter, 555 U.S. at 22 (holding there was no need to address underlying merits of plaintiffs' claims after finding that there was no likelihood of irreparable harm and that the balance of the equities and consideration of the public interest weighed in favor of the defendants).

## III. ANALYSIS

Sweis seeks a permanent injunction "against Defendants to ensure the retention of . . . [the] funds necessary to compensate Plaintiff under the Libya Claims Settlement Program." Pl.'s Mot. 1-2. She insists that the Commission should set aside $3 million, the amount that physically-injured claimants have received under the LCRA. Id. at 15-16; Pl.'s Mot. Ex. 5, p. 3.

-8-

Sweis claims that she will be irreparably injured if the money is not set aside because "it is not known what the U.S. government plans to do" with the funds that remain after the Commission "has confirmed that all claims have been finalized," and "it is possible that the remaining funds would leave the jurisdiction of the United States while the proceeding is being heard by this Court" (emphasis added). Pl.'s Mot. at 2. These allegations clearly do not establish a likelihood that Sweis will be irreparably harmed in the absence of an injunction.

Our Court of Appeals has set a high standard for irreparable injury. Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297-98 (D.C. Cir. 2006). The injury "must be both certain and great; it must be actual and not theoretical." Wisc. Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam); Winter, 555 U.S. at 22 (holding that irreparable injury must be likely, "not just a possibility"). An injunction is not warranted when a movant alleges injuries "merely 'feared.'" Comm. in Solidarity with the People of El Salvador (CISPES) v. Sessions, 929 F.2d 742, 745-46 (D.C. Cir. 1991) (quoting Exxon Corp. v. F.T.C., 589 F.2d 582, 594 (D.C. Cir. 1978)).

Sweis's allegations are based on nothing more than fear and possibility. She admits that she does not know what the

government will do with any surplus funds but notes that "it is possible" that the remaining funds might be removed from the jurisdiction of the United States. Pl.'s Mot. at 2. Later in her motion, Sweis alleges that "[t]here is no doubt that the surplus funds will be either returned to Libya or disbursed otherwise should the Court not require the maintenance of a sufficient amount by granting this motion." Pl.'s Mot. 14-15. However, she provides no support for this proposition. See Mazurek, 520 U.S. at 972 (noting that burden of persuasion is on movant).

The mere fact that the Government has control over any surplus funds and has not indicated what it intends to do with them does not establish a likelihood of irreparable harm to Sweis. See Stand Up For California! v. Dep't of the Interior, Case No. 12-2039, 2013 WL 324035, at *26 (D.D.C. Jan. 29, 2013) (finding no likelihood of harm when plaintiffs focus was on what defendant "will have the ability to do" rather than what they would, in fact, do). The Government has asserted that it does not know the precise amount of funds that remain, but that the next step would be to "consider referring additional categories of claims to the FCSC," including possibly referring "claims that were rejected by the FCSC on jurisdictional grounds" like Sweis's. Defs.' Opp'n, Ex. 13, Declaration of Lisa J. Grosh ¶¶ 7-9. Thus, there is a "possibility that adequate compensatory or

-10-

other corrective relief will be available at a later date,"
which "weighs heavily against a claim of irreparable harm."
Chaplaincy of Full Gospel Churches, 454 F.3d at 297-98 (citation
omitted).

Moreover, our Court of Appeals has established that
"economic loss does not, in and of itself, constitute
irreparable harm." Wisc. Gas Co., 758 F.2d at 674; see also
Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1295 (D.C.
Cir. 2009) (noting "general rule that economic harm does not
constitute irreparable injury"). Thus, because the only injury
that Sweis alleges is economic, she has not met her burden of
showing the possibility of an "irreparable harm," much less
established that such harm is likely to occur.

Sweis insists that her separation-of-powers claim
independently justifies an injunction, because "the loss of
constitutional freedoms, 'for even minimal periods of time,
unquestionably constitutes irreparable injury.'" Mills v. Dist.
of Columbia, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting Elrod
v. Burns, 427 U.S. 347, 373 (1976)). However, our Court of
Appeals has indicated that merely raising a constitutional claim
is insufficient to warrant a presumption of irreparable injury.

Moreover, when a party is seeking a mandatory injunction,
as here, that would alter the status quo rather than preserve

it, "the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage will result from the denial of the injunction.'" <u>Nat'l Conf. on Ministry to Armed Forces v. James</u>, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) (quoting <u>Columbia Hosp. for Women Foundation v. Bank of Tokyo-Misabishi, Ltd.</u>, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), <u>aff'd</u> 159 F.2d 636 (D.C. Cir. 1998)).

Rather, a movant must indicate that a particular constitutional interest is "either threatened or in fact being impaired <u>at the time</u>" the movant seeks injunctive relief. <u>Chaplaincy of Full Gospel Churches</u>, 454 F.3d at 302 (quoting <u>Elrod</u>, 427 U.S. at 373 (plurality opinion)) (emphasis added). Sweis's constitutional argument is that the Commission violated the separation-of-powers principles inherent in the Constitution when it "ignored" this Court's <u>nunc pro tunc</u> Order and the Federal Rules of Civil Procedure in its Final Decision.

Even if an injunction to bar the government from disposing of the $3 million was granted, the alleged constitutional violation – the Commission's decision – would remain in effect. Because granting this injunction would do nothing to prevent "the loss of [constitutional] freedoms, for even minimal periods of time," the presumption of irreparable harm is inappropriate.

-12-

harm is inappropriate. See Time Warner Entm't Co. L.P. v. F.C.C., 810 F. Supp. 1302, 1304 (D.D.C. 1992) aff'd in part, 93 F.3d 957 (D.C. Cir. 1996) (refusing to grant presumption of irreparable harm when "record clearly reveals that no deprivation of defendants' making is presently occurring, and none is likely to occur before the merits of this controversy are decided"). In this case, no constitutional interest is "either threatened or in fact being impaired at the time." Sweis now seeks injunctive relief.

Sweis has failed to show any likelihood of irreparable harm in the absence of a preliminary injunction. Because this showing is "the sine qua non of the preliminary injunction inquiry," Trudeau, 384 F. Supp. 2d at 296, the Court does not need to address the other preliminary injunction requirements.[1]

---

[1] The Court is particularly hesitant to address the likelihood of Sweis's success on the merits because she has moved for leave to file an Amended Complaint. That Motion is not ripe, but, if granted, will render the Complaint a nullity, Hollie v. Smith, 813 F. Supp. 2d 214, 216 n.2 (D.D.C. 2011), and Defendants' current Motion to Dismiss moot. See Gray v. D.C. Public School, 688 F. Supp. 2d 1, 6 (D.D.C. 2010) (citation omitted).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction is **denied.** An Order shall accompany this Memorandum Opinion.


June 15, 2013                          _____
                                       Gladys Kessler
                                       United States District Judge


**Copies to:** attorneys on record via ECF


-14-